# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
708 Third Avenue – 6th Floor
New York, New York 10017

Telephone (212) 209-3933
Facsimile (212) 209-7102
Email: info@jcpclaw.com

February 1, 2019

**BY ECF**

Hon. Colleen McMahon, Chief U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

           **Re:**    *Tepi v. The City Bakery, LLC, et al.*
                   *Case No. 18-CV-2233 (CM)*

Dear Judge McMahon,

      We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with defendants for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously with this correspondence, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

      **I.**    *The Need for the Court's Approval of the Agreement*

      As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II.     Plaintiff's Claims for Unpaid Wages

Defendants own and operate a bakery located at 3 West 18th Street, New York, New York, which also provides full service catering for breakfast and lunch as well as various social events such as children's birthday parties, corporate cocktail parties, photo shoots and fashion shows, real estate open houses, graduations, boat trips/parties, bus tours, school field trips, bat and bar mitzvahs, engagement parties, rehearsal dinners, and weddings (hereinafter, the "Bakery").

In or about 2008, the defendants hired plaintiff to work as a cook and food preparer at the Bakery. Plaintiff worked continuously for the defendants in those capacities until on or about February 18, 2018. Plaintiff alleges that, although his work shift fluctuated each week, he normally worked six (6) days per week, and his work schedule typically consisted of ten and one-half (10½) per day Tuesday, Wednesday, Thursday, Friday, and Sunday from 8:00 a.m. until 6:30 p.m., and nine (9) hours on Saturday from 6:00 a.m. until 3:00 p.m. thereby working approximately sixty (60) hours per week.[1]

With respect to his pay, the parties are in agreement that plaintiff was paid on a salary basis straight time for all hours worked and received the following in gross wages during the relevant six (6) year limitations period beginning in March 2012:

- March 2012 – December 2, 2012: $588.47 per week
- December 3, 2012 – April 26, 2015: $700 per week
- April 27, 2015 – February 18, 2018: $765 per week

During the course of discovery, the defendants produced computerized time records for the period between December 23, 2013 and June 12, 2016. No time records were provided for the period prior to December 23, 2013 or subsequent to June 12, 2016. Defendants' records corroborate plaintiff's allegation that he worked well in excess of forty (40) hours per week during most weeks of his employment. However, assuming the accuracy of the limited records, plaintiff's weekly work shift averaged 46.18 hours per week during that period. Plaintiff disputes the accuracy of the records.

Plaintiff calculated that he is owed approximately $57,600 in underlying unpaid wages and "spread of hours" premiums, with an equal amount in liquidated damages.

Defendants dispute Plaintiff's allegations, and contend that they have substantially complied with the FLSA and NYLL. Defendants contend that if they owe Plaintiff any compensation at all, it would be minimal. Additionally, Defendants contend that that their time and payroll records demonstrate that Plaintiff's wage-and-hour claims are largely exaggerated. In sum, there is a *bona fide* dispute between the parties regarding Plaintiff's wage and hour claims.

---

[1] During the final two (2) months of his employment, Plaintiff's off day was Sunday instead of Monday, but his work schedule otherwise remained the same.

Nevertheless, as reflected in the attached Agreement, the parties have agreed to settle the case for a total of $75,000 to resolve all of plaintiff's wage and hour claims against the defendants, with $15,000 payable within ten (10) days after the Court approves the terms of the settlement and dismisses the action with prejudice, and the remainder paid over fifteen (15) equal and consecutive monthly installments of $4,000 each. We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

### III.   The Agreement is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.*, 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F.2d at 1354)); *see also In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between experienced counsel. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Apr. 13, 2013).

Moreover, as discussed *infra*, one concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. There is always risk that a corporate defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment.

In light of various disputes concerning plaintiff's claims, this settlement should be approved. First, as discussed above, the parties dispute the average number of overtime hours worked by plaintiff each week.

Second, the defendants maintain that plaintiff received a one (1) hour paid meal break meal break, and believe that such time should further reduce plaintiff's compensable work hours to barely over forty (40) hours per week. And, according to the defendants, the meal credit, should be deducted from plaintiff's damages calculations.

Third, the defendants assert that plaintiff received two (2) weeks of paid vacation time each year and that those hours should be reduced from plaintiff's calculations. Plaintiff disputes receiving that time off.

Finally, as mentioned above, there is a significant concern regarding the defendants' ability to withstand a more substantial settlement or judgment. The Bakery has significant

Hon. Colleen McMahon, Chief U.S.D.J.
February 1, 2019
Page 4

operating expenses, which it is barely able to meet on an ongoing basis. And, the individual defendant is in the process of repaying loans in excess of $500,000 to keep the business in operation.

By settling now, plaintiff receives virtually all of his calculated underlying unpaid wages even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff, he made the decision to accept the defendants' offer.

### IV. *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm will retain one-third the net proceeds of the settlement after our initial $500 in costs (filing fee and service) is deducted. Therefore, plaintiff's counsel seeks $24,830 in fees, plus $500 in costs for a total of $25,330. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiff's counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensation plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino's Pizza 49th St. Corp.*, No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one-third of settlement); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Indeed, a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage of the fund method in this District, particularly where it is pursuant to a previously negotiated retainer agreement." *Montenegro v. NMN Food LLC*, No. 18 Civ. 3153, 2018 WL 6618372, at *2 (S.D.N.Y. Dec. 18, 2018); *see also Sanchez v. Venky's Food Corp.*, No. 18 Civ. 1916, 2018 WL 6618373, at *2 (S.D.N.Y. Dec. 18, 2018); *Haddad v. Daniels*, No. 17 Civ. 8067, 2018 WL 6713804, at *1 (S.D.N.Y. Dec. 17,

2018); *Pacheco v. Shree Laxmi Restaurant Inc.*, No. 17 Civ. 3165, 2018 WL 6618439, at *1 (S.D.N.Y. Dec. 17, 2018); *Avila v. 1134 Madison Avenue Restaurant Corp.*, No. 17 Civ. 2382, 2018 WL 6538182, at *1 (S.D.N.Y. Nov. 20, 2018); *Rosario v. MCS Properties LLC*, No. 17 Civ. 5573, 2018 WL 6538183, at *1 (S.D.N.Y. Nov. 20, 2018).

For all of the reasons set forth above, the parties request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith, which expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

We thank the Court for its continued attention to this matter.

Respectfully submitted,

Justin Cilenti

cc: Defense Counsel (by ECF)